UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN ANTHONY LORENZ,

        Plaintiff,

v.

UNKNOWN NEVINS, *et al.*,

        Defendants.
_____/

Case No. 1:24-cv-697

Hon. Ray Kent

**OPINION AND ORDER**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Ryan Anthony Lorenz, a prisoner in the custody of the Michigan Department of Corrections (MDOC). The alleged incidents occurred at the MDOC's Bellamy Creek Correctional Facility (IBC). Compl. (ECF No. 1). Plaintiff sued the following IBC staff in their individual and official capacities: Corrections Officer (CO) Jordan Nevis [referred to as "Nevins"], CO Carson Smith, CO Luman Groce, CO Austin Birdsley, and three unknown COs (John Doe #1, John Doe #2, and John Doe #3).[1] *Id.* This matter is now before the Court on defendants' motion for summary judgment on the basis of exhaustion (ECF No. 13).

    **I.**    **Plaintiff's complaint**

Plaintiff alleged that defendants used excessive force in violation of the Eighth Amendment and "Michigan Law." Plaintiff alleged that he is classified as "death [deaf] / hard of hearing" and prescribed a psychotropic drug which side effects include causing a person to be

---

[1] The Court notes that while plaintiff placed the words "Verified Complaint" on the first page of the complaint, there is no verification, signature, or date. *See* PageID.1, 10.

1

"deeply drowsy". Compl. at PageID.4. On May 14, 2024, defendants CO Nevis, CO Smith, CO Groce, and two unknown COs woke plaintiff up in his cell by punching, kicking, and verbally abusing him. After plaintiff was taken out of his cell, a third unknown CO assaulted him. Defendant CO Birdsley recorded the entire incident on camera and did not take any action to help plaintiff. *Id*. at PageID.4-9. Plaintiff seeks over $1,000,000.00 in compensatory and punitive damages. *Id*. at PageID.10.

## II.   Motion for summary judgment

### A.   Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

2

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

    **B.**    **Lack of Exhaustion**

    **1.**    **Exhaustion requirement**

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

    **2.**    **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective September 25, 2023). A prisoner must

first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ W, Y, and CC. The Policy Directive provides the following directions for completing grievance forms:

> The issue should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ Y (emphasis in original). Within five business days after attempting to resolve a grievable issue with appropriate staff, the prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ CC. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ JJ. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ NN.

### C. Discussion

There is no evidence that plaintiff filed any grievances through Step III which addressed his excessive force claims alleged in this lawsuit. *See* MDOC Prisoner Step III Grievance Report (ECF No. 14-3). The gist of plaintiff's response is that the administrative remedy of filing grievances was unavailable. "An inmate need exhaust only such administrative remedies as are 'available'." *Ross v. Blake*, 578 U.S. 632, 648 (2016). "[W]hen prison administrators thwart inmates from taking advantage of a grievance process through machination,

4

misrepresentation, or intimidation . . . , such interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id*. at 644.

Here, plaintiff has filed a declaration giving three reasons why the grievance process was unavailable. First,

> On May 14, 2024, before and after being transfered [sic] to health service I requested a sergeant/supervisor and a grievance [sic], in response my cuffed hands were placed outside a chair behind my back, where C.O. Groce continued to kick my wrist until they [sic] were black and blue.

Lorenz Decl. (ECF No. 19, PageID.88). Second, "Shortly after May 15, 2024, I was placed on paper restriction after continously [sic] requesting a sergeant and a greivance [sic], and my request were denied." *Id*. Third,

> On an unknown date, a few days later after I received my property, I requested a sergeant and a greivance [sic] again and was again denied and placed on paper restriction yet again, making exhaustion unavailable, yet exhausting all of my claims against defendants in this case.

*Id*. at PageID.89.

Plaintiff's declaration on this issue is conclusory and vague. As an initial matter, plaintiff does not identify the individuals involved in the alleged "paper restriction", the nature of the restriction, or how the restriction prevented him from filing a Step I grievance form. In addition, plaintiff does not present any documentary evidence that an MDOC official placed him on a paper restriction on either May 15, 2024, or at a later unidentified date. "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). *See generally, Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (stating that the object of a summary judgment motion "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

5

In their reply, defendants presented an affidavit from IBC Litigation Coordinator Aaron Vroman, who reviewed plaintiff's MDOC housing records, the IBC grievance database and "[r]ecords as to whether a prisoner had been placed on paper restriction while at IBC". Vroman Aff. (ECF No. 24-2, PageID.108). Based on a review of these records, Vroman stated: that plaintiff was incarcerated at IBC from May 7, 2024 through May 30, 2024, when he was transferred to the Carson City Correctional Facility (DRF). *Id*. at PageID.109. In addition, while plaintiff was housed at IBC in May 2024, "he did not file any Step I grievance or Step II appeal, nor was he ever placed on paper restriction." *Id*. With respect to obtaining grievance forms, Vroman stated that, "Step I grievance forms are readily available to prisoners at IBC and can be obtained from the custody or housing staff in the housing units, the law library, or the grievance coordinator." *Id*. Plaintiff did not seek leave to file a sur-reply to rebut the matters set forth in the reply or Mr. Vroman's affidavit.

Finally, plaintiff states that he was not given a grievance form when he was handcuffed during the excessive force incident on May 14, 2024 (*i.e.*, before and after being transferred to health service). In this regard, plaintiff does not explain who he spoke with about the grievance forms or how he could write a grievance while handcuffed during the excessive force incident. "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (stating that the object of a summary judgment motion "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

Based on this record, there is no evidence that plaintiff properly exhausted a grievance against defendants. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. In

6

addition, plaintiff has failed to present sufficient facts which, if accepted as true, demonstrate that the grievance procedure was unavailable.  In this regard,

> Even if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable. When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances.

*Lamb v. Kendrick*, 52 F.4th 286, 293 (6th Cir. 2022) (internal citations and quotation marks omitted).  Here, plaintiff has provided no facts for the Court to examine in determining whether his efforts to exhaust were sufficient "under the circumstances".[2]  Accordingly, defendants' motion for summary judgment will be granted.

### III.    State law claim

As discussed, plaintiff alleged that defendants violated "Michigan Law". Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."); *Landefeld v. Marion General Hospital, Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at

---

[2] The Court has considered *Perttu v. Richards*, 605 U.S. 460, 479 (2025), in which the Supreme Court held "that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." Here, plaintiff's lawsuit involves an excessive force claim.  Plaintiff suggests that his failure to exhaust was "intertwined" with the merits of his alleged excessive force claim, because someone refused to give him a grievance form while he was handcuffed during the excessive force incident.  However, *Perttu* does not apply here, because plaintiff did not identify a genuine issue of material fact related to exhaustion which a jury could decide at trial.

7

1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, plaintiff's state law claims will be dismissed without prejudice.

### IV. Doe defendants

As discussed, plaintiff's lawsuit includes three unidentified "Doe" defendants, *i.e.*, CO John Doe #1, CO John Doe #2, and CO John Doe #3. A "Doe" defendant listed in a complaint is not a party to a lawsuit. Rather, "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Hindes v. FDIC*, 137 F.3d 148, 155 (3rd Cir. 1998) (internal quotation and citation omitted). The failure to identify and serve a Doe defendant constitutes failure to prosecute and warrants a dismissal of that defendant. *See Saucier v. Camp Brighton Prison*, No. 13-15077, 2016 WL 11468926 at *3 (April 26, 2016), *R&R adopted*, 2016 WL 3251761 (E.D. Mich. June 14, 2016). As discussed, the Court will grant summary judgment in favor of defendants. There are no other parties remaining in the lawsuit. Accordingly, plaintiff's claims against the unserved, unidentified John Doe defendants will be dismissed without prejudice.

## V. Conclusion

For the reasons set forth in this opinion,

**IT IS ORDERED** that defendants' motion for summary judgment (ECF No. 13) is **GRANTED**, that plaintiff's state law claim is **DISMISSED** without prejudice, that plaintiff's claims against the three John Doe defendants are **DISMISSED** without prejudice, and that judgment will be entered in favor of defendants.


Dated:  September 12, 2025                              /s/ Ray Kent
                                                        RAY KENT
                                                        United States Magistrate Judge